Susan I. Eastman
Arizona Bar No.021859
Navajo-Hopi Legal Services Program
Post Office Box 2990
Tuba City, Arizona 86045
(928) 283-3300
E-mail: seastman@nndoj.org

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Justin Begay, | ) | No. |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR JUDICIAL REVIEW |
| | ) | |
| vs. | ) | |
| | ) | |
| Office of Navajo and Hopi Indian | ) | |
| Relocation, *an Administrative Agency of* | ) | |
| *the United States,* | ) | |
| | ) | |
| Defendant. | ) | |

**PRELIMINARY STATEMENT**

1.  This action is brought by Plaintiff, Justin Begay, to obtain judicial review of an administrative decision of the Office of Navajo and Hopi Indian Relocation finding that he is not entitled to relocation assistance benefits pursuant to the Navajo-Hopi Land Settlement Act ("Settlement Act"), Pub. L. No. 93-531, §12, December 22, 1974, 88 Stat. 1716 (formerly codified at 25 U.S.C. §640d), and the regulations promulgated thereunder.  The agency wrongfully found that Plaintiff was not a legal resident of the Hopi Partitioned Lands ("HPL") as of July 7, 1986, at a time when he would have been considered self-supporting.

**I.  JURISDICTION AND VENUE**

2. This court has jurisdiction pursuant to 28 U.S.C. §1331, 5 U.S.C. §701-706, and the Settlement Act, Pub. L. No. 93-531, §12, December 22, 1974, 88 Stat. 1716, as this action is an

appeal from an eligibility determination of Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR"), an administrative agency of the United States, located in Flagstaff, Arizona.

3. Plaintiff has exhausted his administrative remedies.

4. Venue is proper in this District pursuant to Pub. L. No. 93-531, §15(g), December 22, 1974, 88 Stat. 1719, as amended by Pub. L. No. 100-666, §10, July 8, 1980, 102 Stat. 3929, November 16, 1988, which requires appeals of ONHIR eligibility determinations to be brought in this Court.

## II. PARTIES

5.  Plaintiff Justin Begay is an enrolled member of the Navajo Nation subject to relocation from his family home on the HPL as a consequence of the Settlement Act.

6.  Defendant ONHIR is an independent federal agency created by the United States Congress pursuant to the Settlement Act, Pub. L. No. 93-531, §12, December 22, 1974, 88 Stat. 1716, as amended by Pub. L. No. 100-666, §4(a), November 16, 1988, 102 Stat. 3929, 3934, to carry out the relocation of members of the Navajo and Hopi Tribes who resided on land that was partitioned to the other tribe, and to provide relocation assistance benefits for all households required to relocate. ONHIR has a fiduciary duty to administer its program in a fair manner and to insure that relocatees receive the full benefits to which they are entitled.

## III. PROCEDURAL HISTORY

7.  Plaintiff applied for relocation benefits pursuant to 25 CFR §700.138, and his Application was received by Defendant March 23, 2009.

8.  Plaintiff was denied November 10, 2009; he submitted a timely appeal December 8, 2009 which was accepted by ONHIR December 16, 2009.

9.  An Administrative Hearing was held November 21, 2014.  Plaintiff's witnesses were his mother, Essie Begay and his sister, Rena Begay.  ONHIR did not present any witnesses.

10.  Post-hearing briefs were submitted to the Hearing Officer by Defendant on

December 19, 2014 and by Plaintiff on January 9, 2015.

11.  The Hearing Officer issued a Decision February 6, 2015, upholding ONHIR's denial of relocation benefits to Mr. Begay.   Final Agency Action was taken March 11, 2015.

## IV.  FACTS

12.  Justin Begay was born on May 25, 1966.  Justin and his family lived in the Fingerpoint area of Teesto on land that was partitioned to the Hopi Tribe ("HPL").  Justin's parents are Harrison Begay, Sr. and Essie Begay.  They were certified for relocation benefits July 26, 1982 and relocated April 13, 1992.

13.  Plaintiff's older sister Rena Begay was born on July 8, 1960.  She was certified for relocation benefits March 19, 1982 and received a relocation home.

14.  Plaintiff attended the Dilkon Boarding School for two years and stayed in the dormitory there.  His parents would check him out and bring him home to Fingerpoint on weekends.

15.  After attending the Dilkon Boarding School, Justin attended school in Snowflake, Arizona where his parents rented a home.  He lived with his parents while attending school in Snowflake and returned to Fingerpoint three weekends a month.

16.  From 1978 to 1984, Justin spent one to two weeks per summer, plus three weekends a month, at his parents' Fingerpoint residence assisting with chores such as wood chopping and watching the sheep.  He left personal belongings including clothing and bicycles at the Fingerpoint residence.

17.  Essie and Harrison Begay's Fingerpoint residence included a two-room house and a storage shack.

18.     Justin graduated from Snowflake High School in May, 1985.  After high school, he lived with his parents in Snowflake and continued to return to Fingerpoint on the weekends. He looked for work in Snowflake but could not find any.

19.     In January, 1986 Justin began working full-time for Custom Mailing Service in Tempe, Arizona.  His older sister, Rena had been working there since 1978.

20.     Justin lived with Rena and her family in their studio apartment in Phoenix while working for Custom Mailing Service.  Justin would travel to Fingerpoint at least two to three weekends a month, riding with Rena and her family.  Sometimes he met his parents in Snowflake and traveled with them in their vehicle, and sometimes he rode with his sister and brother-in-law in their vehicle directly from Phoenix to Fingerpoint.

21.     Justin and Rena worked night shifts five days a week at Custom Mailing Service.

22.     While staying with his sister in Phoenix in 1986, Justin spent more time in Fingerpoint more often than he did he did at his parents' rental home in Snowflake, as his parents also returned to Fingerpoint each weekend.

23.     Justin earned at least minimum wage while working at Custom Mailing Service and as of September 16, 1986 had earned $4,732.60.  By July 7, 1986, Justin had earned $3,183.90, and at the close of 1986, earned $6,828.24.

24.     Justin filed his own income tax returns in 1986.  His parents filed separate returns, but claimed him as a dependent that year.  They did not include his income in their tax return, and Justin did not know at the time he had been claimed as a dependent by them.

25.     Neither Essie and Harrison Begay nor Rena Begay assisted Justin financially in 1986.  Justin, however, gave his sister $80/month towards rent for the studio apartment they all

lived in, paid for his own clothes and toiletries, contributed to the grocery bill and provided his own lunches.

26.     Defendant ONHIR sent Essie Begay a letter dated February 25, 2009 requesting assistance in locating Justin so that he could apply for relocation benefits.  In response to an inquiry from Justin regarding such benefits, ONHIR sent Justin a letter March 10, 2009, enclosing a relocation benefits application.

27.     On Justin's relocation benefits application, he stated he left the HPL in 1992. That was the date Essie and Harrison Begay also left the HPL, as they relocated that year.  Justin was included as a member of their household at the time of their relocation.

28.     ONHIR policies specifically permit the children of certified parents the opportunity to apply for their own benefits, even if they were members of their parents' household at the time of their parents' relocation.

29.     ONHIR initially denied Justin because they believed he moved from the HPL in 1986 and was not a self-supporting head of household at that time.

30.     To receive benefits, Justin must have continued his legal residence on the HPL through the date he became a head of household.    Head of household status can be obtained through marriage, having a child or by earning sufficient income, which ONHIR has determined to be at least $1300/year.

31.     ONHIR's Final Agency Action adopted and affirmed the Hearing Officer's Findings of Fact, Conclusions of Law, and Decision, on March 11, 2015.

32.     In that decision, the Hearing Officer agreed that Justin earned enough income to be considered a head of household by July 7, 1986.   The question for the Hearing Officer was whether Justin's residence on that date was Fingerpoint, Snowflake or Phoenix.

33.     From the time Justin turned eighteen in May, 1984, through December, 1985, Justin lived with his parents in Snowflake, and the family returned to Fingerpoint three weekends each month.  Justin had no transportation of his own and had not yet found work.  Justin also spent 1-2 weeks during the summer of 1984 at Fingerpoint.

34.     From January, 1986 through July 7, 1986, Justin lived in Phoenix with his sister, Rena and returned to Fingerpoint 2-3 weekends per month.  He did not have his own transportation.

35.     Rena had moved to Phoenix in 1978 to take a job at the forerunner of Custom Mailing Service (either Federated Mailing or Federal Mailing Systems).  She worked for Federated, then Custom Mailing "off and on" until Justin joined her in the same job in 1986. Because her certification for relocation benefits had to have been made after she turned 18 (she was born in 1960), and with a residency on the HPL no later than July 7, 1986, she was a weekend resident of Teesto from 1978-1986.

36.     The purpose of the Navajo-Hopi Settlement Act, Pub. L. No. 93-531,§12, December 22, 1974, 88 Stat.1716, is to, "insure that persons displaced as a result of the Act are treated fairly, consistently and equitably so that these persons will not suffer the disproportionate adverse, social, economic, cultural and other impacts of relocation." 25 CFR §700.1(a) The denial of Plaintiff's application for relocation assistance benefits by ONHIR violates the Settlement Act.

## IV. CLAIM FOR RELIEF

37.     Plaintiff Justin Begay complains that Defendant ONHIR's decision to deny him relocation assistance benefits to which he is entitled as a matter of law adversely affects him.

38.     ONHIR's final decisions regarding eligibility determinations are subject to judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

39.     This Court shall set aside an agency decision that is, "unsupported by substantial evidence," or that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [.]" 5 U.S.C. § 706(2)(A), (E).

40.     Defendant ONHIR's decision to deny Plaintiff Relocation Benefits is arbitrary, capricious and an abuse of discretion.

41.     Defendant ONHIR's decision is not supported by substantial evidence.

42.     Defendant ONHIR's eligibility decision is not in accordance with applicable law.

WHEREFORE, Plaintiff Justin Begay respectfully requests that this Court:

(a)  assume jurisdiction over the matter;

(b)  after judicial review, enter judgment finding Defendant's eligibility determination  contrary to law and set it aside;

(c)  order Defendant to issue a new determination that Plaintiff Justin Begay is  eligible for relocation assistance benefits and award those benefits to him;

(d)   award Plaintiff costs and reasonable attorney's fees pursuant to 28 U.S.C. §2412;

(e)   grant such other relief as this Court deems just and proper.

Respectfully submitted this 10th day of March, 2021.

/s/ Susan I. Eastman
Susan I. Eastman
Attorney for Plaintiff
117 Main Street
P.O. Box 2990
Tuba City, AZ 86045

7