**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Begay,<br><br>            Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>            Defendant. | No. CV-21-08049-PCT-DJH<br><br>**ORDER** |

Pending before the Court are the parties' motions for summary judgment. (Docs. 15; 17). Plaintiff seeks relief from a denial of relocation assistance benefits under the Navajo–Hopi Settlement Act by Defendant Office of Navajo and Hopi Indian Relocation ("ONHIR"). The Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion.[1]

**I.    Background**

Plaintiff is an enrolled member of the Navajo Nation. (Doc. 1 at ¶ 5). He was subject to relocation from his home on the Hopi Partitioned Lands ("HPL") because of the Navajo–Hopi Settlement Act, 25 U.S.C. § 640d *et seq.* (*Id.*) Congress created ONHIR, an independent federal agency, to carry out the relocation of Navajo and Hopi Tribal Members who resided on land that was partitioned to the other tribe, and to provide relocation assistance benefits for all households required to relocate. (*Id.* at ¶ 6). Plaintiff and his family moved from HPL on April 13, 1992. (*Id.* at ¶ 12).

---

[1] The Court notes Plaintiff's Reply (Doc. 19) exceeds the eleven (11) pages permitted under the Local Rules. *See* LRCiv 7.2(e)(2).

On March 23, 2009, Plaintiff applied for relocation benefits under 25 C.F.R. § 700.138. (*Id.* at ¶ 7). The application was denied based on a finding that Plaintiff had "moved from the HPL in 1986 and was not a self-supporting head of household at that time." (*Id.* at ¶¶ 8; 29).

Plaintiff filed an appeal, and a hearing was held November 21, 2014. (*Id.* at ¶ 8–9). The Independent Hearing Officer ("IHO") issued a decision on February 6, 2015, denying the appeal. (*Id.* at ¶ 11). Although the IHO found that Plaintiff had earned enough income to be considered a head of household by July 7, 1986, he concluded Plaintiff's residence on that date was not Finger Point, an area within the HPL, but either Snowflake or Phoenix, Arizona. (*Id.* at ¶ 32; Doc. 14 at 330). On March 11, 2015, ONHIR issued its Final Agency Action affirming the Hearing Officer's decision. (*Id.* at ¶ 11).

On March 10, 2021, Plaintiff filed his Complaint, requesting this Court reverse ONHIR's decision and find Plaintiff eligible for relocation assistance benefits. (Doc. 15).

**II.     Legal Standard**

Under the Administrative Procedure Act ("APA"), an aggrieved party may sue to set aside a final non-discretionary agency action that is arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. §§ 702, 706(2)(A), (2)(E). "[T]he reviewing court can reverse only if the agency action was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni v. Navajo–Hopi Indian Relocation Com'n*, 878 F.2d 1119, 1122 (9th Cir. 1989).

An agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "The arbitrary and capricious standard is highly deferential, presuming the agency action to be valid and [requires] affirming the

agency action if a reasonable basis exists for its decision." *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (internal citation omitted).

When the court conducts judicial review under the APA, "summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 770 (9th Cir. 1985). However, the agency is the fact finder and the court's role "is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* at 769.

### III. Discussion

#### A. Plaintiff's Residency

An applicant for relocation benefits bears the burden of establishing that he was (1) a legal resident of the HPL on December 22, 1974, and (2) a head of household on or before July 7, 1986. 25 C.F.R. § 700.147. The first element is at dispute here.

The term "residence" in the final rule "requires an examination of a person's intent to reside combined with manifestations of that intent." *Todicheeney v. Off. of Navajo & Hopi Indian Relocation*, 2022 WL 1555394, at *4 (D. Ariz. May 17, 2022) (citation omitted). Manifestations of intent may include ownership of livestock, ownership of improvements, grazing permits, livestock sales receipts, homesite leases, medical records, school records, employment records, mailing address records, banking records, voting records, census data, court records, the Joint Use Area roster, and any other relevant data. 49 Fed. Reg. 22, 278. If a plaintiff left the HPL temporarily to pursue employment, a plaintiff can still establish his legal residency by showing substantial and recurring contacts with his home within the HPL. *See Tso v. Off. of Navajo & Hopi Indian Relocation*, 2019 WL 1877360, at *4 (D. Ariz. Apr. 26, 2019).

Plaintiff argues that he satisfied the legal resident requirement for two reasons. First, he argues his employment in Tempe, Arizona falls under the "temporarily away" exception and thus he retained legal residence at his parents' home in Finger Point while away. (Doc. 15 at 11). Second, he argues the IHO's failure to find Plaintiff a legal resident

of the HPL was arbitrary and capricious because the ONHIR certified his older sisters who had similar residence and employment patterns to Plaintiff. (*Id.* at 13).

The IHO found Plaintiff did not maintain substantial and recurring contacts with his parents' residence in Finger Point to be considered as having retained that area as his legal residence by the time he attained head of house status in the summer of 1986. (Doc. 14 at 327). The evidence in the record adequately supported this finding. Indeed, the IHO first found Plaintiff's visits to Finger Point were limited to brief periods and social in nature. (*Id.* at 329). The IHO highlighted that Plaintiff grew up in Snowflake, attended school there, and continued to live there after he graduated from high school. (*Id.*) The IHO noted that Plaintiff testified he viewed Snowflake as his "home," and retained his Snowflake address after he moved to Phoenix for work. (*Id.*) His mother also reported him as dependent on her 1986 tax returns, which listed Snowflake, Arizona, as their residence. (*Id.*) The IHO thus found, based on that evidence, that "[b]y the time [Plaintiff] became an adult, the greater weight of evidence shows [Plaintiff's] legal residence was in Snowflake and later in Phoenix—long before he could be considered to be self-supporting." (*Id.* at 330).

In additional to these findings, the Court notes Plaintiff provided no evidence of intent to reside on the HPL through July 7, 1986. Thus, under this "highly deferential" standard, the Court finds the IHO provided a rational explanation for its residency determination and that "a reasonable basis exists for its decision." *Kern County Farm Bureau*, 450 F.3d at 1076; *see also Tso*, 2019 WL 1877360, at *4 (finding the "temporarily away" exception did not apply because any visits plaintiff made to the HPL were "social and incidental" and not enough to show substantial and recurring contacts for the exception to apply).

Plaintiff further argues that the IHO's decision is arbitrary and capricious because the IHO applied its temporarily away exception to Plaintiff's parents and two sisters in finding them eligible for relocation benefits, but not to Plaintiff. (Doc. 19 at 6). To support this proposition, Plaintiff cites *Shaw v. Off. of Navajo & Hopi Indian Relocation*, where

the court found the IHO's decision was not supported by substantial evidence because the IHO did not explain why his conclusion was inconsistent with his decision in the cases of Shaw's family members with whom she lived and worked in traditional activities. *See* 860 F. App'x 493, 495 (9th Cir. 2021).

The Court rejects Plaintiff's argument because his case is distinguishable from his sister Rena and Peggy's case. ONHIR's "obligation is only that the agency applies the law consistently to cases with similar material facts; it does not require the agency find the same facts for different parties, in different proceedings, and based on different evidence." *Daw v. Office of Navajo & Hopi Indian Relocation*, 2020 WL 5632121, at *4 (D. Ariz. Sep. 18, 2020) (internal citation omitted). As to Peggy, no evidence in the record indicates ONHIR applied the temporarily away exception to her case. Plaintiff cites to Peggy's relocation certification, but the conclusion paragraph merely states Peggy "maintained continual contacts with HPL homesite prior to and after 1980 when the applicant became custodial parents." (Doc. 14 at 120). The determination there thus concerned whether Peggy was still a legal resident on HPL on July 16, 1980, when she became a head of household. (*Id.* at 118–119). This residency determination is materially different from Plaintiff's summer of 1986 date.

As to Rena, ONHIR concluded "[a]pplicant was temporarily away after 1976 with substantial recurring contacts, or was dependent within household which maintained substantial recurring contacts." (*Id.* at 109). These findings imply ONHIR either found Rena had substantial recurring contacts, or Rena was dependent within a household that had substantial recurring contacts. But whether the former or the latter, the certification is related to 1976 and not the summer of 1986—the date at issue in Plaintiff's case. Neither Peggy nor Rena's certifications contain the same factual circumstances as Plaintiff. Both achieved head of household at different times than Plaintiff and the IHO must base his decision on the record before him. *See Daw*, 2020 WL 5632121, at *4 (rejecting plaintiff's argument that an IHO's prior findings controlled his later findings).

Here, after hearing witness testimony and reviewing all evidence on record, the IHO

determined that "[b]y the time [Plaintiff] became an adult, the greater weight of evidence shows [Plaintiff's] legal residence was in Snowflake and later in Phoenix—long before he could be considered to be self-supporting [as of the July 7, 1986 deadline]." (Doc. 14 at 330). The IHO reached this conclusion after considering Plaintiff's and his family's testimonies. The IHO explained that he found Rena and Essie Begay's testimony to be inconsistent with Plaintiff's testimony about his recurring visits to Finger Point. This was because of conflicting testimony regarding Plaintiff's work schedule, the passengers on the trips to Snowflake, and the trips' itineraries. (Doc. 14 at 328). These factual contradictions were enough for the IHO to rationally conclude that Plaintiff and his family's statements were not credible as to Plaintiff's recurring weekend visits. The Court thus finds the IHO did not act arbitrarily or capriciously in finding Plaintiff failed to show substantial and recurring contacts to prove he was a legal resident of Finger Point as of the July 7, 1986 deadline. *See Tso*, 2019 WL 1877360, at *4.

**B. Credibility Findings**

Plaintiff argues that the IHO failed to provide specific and cogent reasons for his negative credibility finding as to Plaintiff's return visits home with his mother and sisters. (Doc. 15 at 17). Defendant argues substantial evidence supports the IHO's credibility determination. (Doc. 16 at 8, 12).

"When the decision of [a hearing officer] rests on a negative credibility evaluation, [he] must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec. of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted). An agency's "credibility findings are granted substantial deference by reviewing courts." *De Valle v. INS*, 901 F.2d 787, 792 (9th Cir. 1990) (citations omitted). The hearing officer alone is "in a position to observe [a witness]'s tone and demeanor, to explore inconsistencies in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence. He is . . . uniquely qualified to decide whether [a witness's] testimony has about it the ring of truth." *Begay v. Office of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d 1040, 1049 (D. Ariz.

2018) (citing *Sarvia–Quintanilla v. U.S. INS*, 767 F.2d 1387, 1395 (9th Cir. 1985)).

Plaintiff argues the IHO provided no evidence to find Plaintiff's testimony adverse regarding his return visits to Finger Point from either Snowflake or Phoenix. (Doc. 15 at 17). But the record shows otherwise. As discussed, the IHO noted inconsistencies between Plaintiff's testimony and his mother and sister's testimonies regarding their itineraries, the passengers present for such trips, and their work schedules. (Doc. 14 at 328). The IHO further noted that even if the visits to Finger Point occurred, the visits were limited to brief social visits. (*Id.* at 329). The IHO thus concluded Plaintiff's recurring visits on the weekends were not credible. (*Id.* at 328). Considering these inconsistencies and the objective evidence in the record, the Court finds the IHO had sufficient reason to find Plaintiff's testimony about his visits to Finger Point uncredible. *See Begay v. Off. of Navajo & Hopi Indian Relocation*, 2021 WL 4247919, at *4 (D. Ariz. Sept. 17, 2021) ("where an IHO offers "specific cogent reasons" for rejecting testimony as uncredible, that determination is accorded "substantial deference.").

**IV. Conclusion**

The IHO's findings that Plaintiff was not a legal resident of Finger Point before becoming a "head of household" in the summer of 1986 are adequately supported by the evidence. Thus, the Court finds the IHO's decision denying Plaintiff's application for relocation assistance benefits was not arbitrary and capricious. The decision was made in accordance with law and supported by substantial evidence. The Court therefore affirms the IHO's denial of Plaintiff's application for relocation benefits.

Accordingly,

**IT IS HEREBY ORDERED** that the Independent Hearing Officer's decision dated February 6, 2015 (Doc. 14 at 322–330) is **affirmed**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 15) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgement (Doc. 17) is **granted**.

1       **IT IS FINALLY ORDRED** that the Clerk of the Court shall enter judgment
2 accordingly and terminate this case.
3       Dated this 11th day of August, 2022.

_____
Honorable Diane J. Humetewa
United States District Judge